# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

February 21, 2019

**BY ECF**

Hon. Stewart D. Aaron, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    *Re:* *Vargas-Garcia v. Mexican Fast Food Inc., et al.*
       *Case No. 18-CV-6643 (SDA)*

Dear Magistrate Aaron,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for defendants for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. Defendants are of the view that Plaintiff is not owed any further compensation and the settlement is for the parties' mutual convenience and not in any manner a concession of liability on any theory. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter negotiated at arm's length between experienced counsel, as well as with the assistance of the Court during a settlement conference on January 23, 2019.

    *I.* ***The Need for the Court's Approval of the Agreement***

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d

1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.     *Plaintiff's Claims for Unpaid Wages*

Defendants own and operate a restaurant in the Bronx (the "Restaurant"). Plaintiff alleges that she was employed by the Restaurant as a grill cook from in or about February 2016 until on or about June 30, 2018.[1] Plaintiff contends that she worked the following hours and was paid straight time for all hours worked at the following rates:

- <u>2/2016-8/2016</u>: 36 hours per week; paid a daily rate of either $40 or $90 (depending on the day) for a total of $290 per week

- <u>9/2016 - 8/2017</u>: 44 hours per week; paid a daily rate of either $40, $90, or $100 (depending on the day) for a total of $410 per week

- <u>9/2017 – June 30, 2018</u>: 62 hours per week; paid a daily rate of either $100 or $120 (depending on the day) for a total of $640

Plaintiff calculates that she is owed approximately $18,200 in underlying unpaid minimum wages, overtime compensation, and "spread of hours" premiums, with an equal amount of liquidated damages.

After a mediation, as reflected in the attached Agreement, the parties have agreed to settle the case for a total of $26,100 to resolve all of plaintiff's wage and hour claims against the defendants, payable in six (6) equal installments of $4,350 commencing on March 20, 2019 or within ten (10) days after the Court approves the terms of the settlement and dismisses the action with prejudice, whichever is later. We believe this settlement to be a fair resolution to this litigation due to *bona fide* disputes about plaintiff's claims.

## III.     *The Agreement is Fair and Reasonable*

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive

---

[1] The Complaint states that plaintiff commenced her employment at the Restaurant in February 2015. However, that was alleged in error.

Hon. Stewart D. Aaron, U.S.M.J.
February 21, 2019
Page 3

arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as with the Court's assistance during a settlement conference. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

Second, Defendants are willing to enter this settlement and forego continued litigation over significant issues of law and fact in order to avoid further costs of litigation.

Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant with limited financial resources. The Agreement significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within six (6) months of the Court's approval.

In light of various disputes concerning plaintiff's claims and the defendants' financial viability, this settlement should be approved. First, plaintiff's calculations are based on her own recollection about her hours worked. Plaintiff has no records of her own as to the hours she worked each week. Meanwhile, the defendants have not admitted any wrongdoing and continue to take the position that Plaintiff was paid lawfully.

Additionally, the defendants maintain that plaintiff received a thirty (30) minute meal break each day, and received at least one (1) free meal per day. According to the defendants, the meal credit, which amounts to between $3.10 and $4.65 per meal per day (depending on the period of employment) should be deducted from plaintiff's damages calculations.

Defendants further argue that plaintiff was motivated to bring this litigation solely as a result of an argument with the defendants' husband, which purportedly led to her termination. Plaintiff disputes this premise. Also, the defendants contend that plaintiff's other family members (namely, her godson) commenced a similar wage and hour action against his employer, thereby suggesting a litigious pattern or practice. Plaintiff was unaware of her godson's alleged prior litigation, nor does plaintiff believe any such alleged fact is relevant to this action or would be admissible at trial. Nevertheless, it was an additional layer of contention between the parties that is averted as a result of the settlement.

Finally, as mentioned above, there is a significant concern regarding the defendants' ability to withstand a more substantial settlement or judgment. The restaurant has significant operating expenses, which it is barely able to meet on an ongoing basis. It is the defendants' position that the corporation does not meet the FLSA's $500,000 doing business threshold.

Thus, there was a real possibility that this matter could have been pushed into state court, which would have led to a prolonged period of litigation and expenses.

By settling now, plaintiff receives virtually all of her calculated underlying unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, she made the decision to accept the defendants' offer.

### IV.     *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after our initial $500 in costs (filing fee and service) is deducted. Therefore, plaintiff's counsel seeks $8,532 in fees, plus $500 in costs for a total of $9,032, which is less than the firm's lodestar (see billing statement attached). Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is slightly more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have previously been approved as reasonable. *See Castaneda v. Natural Crop, Inc., et al.*, No. 17 Civ. 4258 (PK) (E.D.N.Y. Jan. 9, 2019); *Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v.*

Hon. Stewart D. Aaron, U.S.M.J.
February 21, 2019
Page 5

*Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Mizhquiri v. New Today's Laundromat, Inc., et al.*, No. 14 Civ. 1715 (AMD) (E.D.N.Y. May 30, 2017); *Cantoran, et al. v. Shanghai Duplicate Corp., et al.*, No. 15 Civ. 8868 (KBF) (S.D.N.Y. Oct. 13, 2016); *Sierra v. Skyline Gourmet Deli, et al.*, No. 15 Civ. 3319 (SN) (S.D.N.Y. May 10, 2016); *Romero v. Lu Woodside Mini Mall, Inc., et al.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. May 9, 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. Aug. 19, 2016).

Attached hereto is a copy of Cilenti & Cooper, PLLC's billing statement for work performed on this matter. Plaintiffs' attorney, Justin Cilenti, is the founding partner of Cilenti & Cooper, PLLC. In the twenty-one (21) years since being admitted to practice in the State of New York, including the Southern District of New York, I have litigated a multitude of cases from inception through disposition, including trial. I practice in the New York State Supreme Court, the Appellate Divisions of the New York Supreme Court, and the Federal District Courts for the Southern and Eastern Districts of New York, as well as the Federal District Courts of New Jersey.

Tatiana Cevallos is a legal assistant at Cilenti & Cooper, PLLC, who assists with file management, organizing documents, and assisting with client meetings. She is fluent in Spanish and English and translates for plaintiffs at office meetings, court conferences, and mediations. Ms. Cevallos is a graduate of CUNY School of Professional Studies.

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Karin Arrospide, Esq. (by ECF)